## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MILTON OWENS**,

  **Plaintiff,**

**v.**                 **Case No. 8:05-CV-1399-T-EAJ**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

  **Defendant.**

_____/

## FINAL ORDER

  Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g) et seq., to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits.[1]

  The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

### A. Standard of Review

  In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g)(2003).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the

---

[1] The parties have consented to proceed before the Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.  (Dkt. 13).

Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. <u>Goodley v. Harris</u>, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. <u>See</u> <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. <u>See</u> <u>Jamison v. Bowen</u>, 814, F.2d 585, 588 (11th Cir. 1987).

**B.     Factual Background**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 12, 2001, claiming an onset of disability beginning June 9, 2001.[2] (T 69-71, 194-197) Plaintiff's application was denied initially, upon reconsideration, and by the Administrative Law Judge ("ALJ") in a decision issued on May 20, 2004. (T 18-28) The Appeals Council declined to review the ALJ's decision (T 4-6), making the ALJ's decision the final decision of the Commissioner.

The ALJ found that Plaintiff was not eligible for benefits because he was not disabled at any time through the ALJ's decision on May 20, 2004. (T 28) Disability benefits were denied. <u>Id</u>. Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

---

[2] Plaintiff filed previous applications for DIB and SSI on July 20, 2000 (T 66, 187), which were denied at the initial level (T 41, 191) and upon reconsideration (T 45, 201).

Plaintiff was 48 years old at the time of the administrative hearing on August 21, 2003. (T 577) Plaintiff attended school through the 9th grade. (T 580) Plaintiff's past relevant work experience consists of road maintenance worker, furniture upholsterer, cook and kitchen helper, and sanitation worker. (T 115, 123) Plaintiff asserts that diabetes, headaches, back pain from the spine, and vision problems have rendered him unable to work since June 9, 2001. (T 114)

Following the administrative hearing on August 21, 2003, the ALJ found that Plaintiff suffered from HIV infection, diabetes mellitus, diabetic retinopathy with vision problems, a history of lower back pain due to a bullet fragment lodged in his left anterior pelvis, borderline IQ, and substance abuse allegedly in remission. (T 22) The ALJ determined that the above impairments are severe, but that Plaintiff's impairments or combination of impairments do not meet or medically equal the impairments listed in Appendix 1, Subpart P of Regulations No. 4. Id. The ALJ held that Plaintiff could not perform his past relevant work, but that he could perform a reduced range of light work activity.[3] (T 25) Specifically, the ALJ noted that Plaintiff cannot be exposed to temperature extremes or hazards, is unable to perform tasks requiring acute vision, is limited to routine, one to two step instructions, and is able to read at only a third-grade level. Id.

Relying on the testimony of a vocational expert ("VE") in response to a hypothetical question which incorporated these limitations, the ALJ concluded that Plaintiff could perform jobs such as wrapper and packager, ticket taker, and bench assembly worker. (T 27) In reaching the

---

[3] Light work, defined at 20 C.F.R. §§ 404.1567(b), involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Light work may require a good deal of walking or standing, or may involve sitting most of the time with some pushing and pulling of arm or leg controls.

conclusion that Plaintiff was not "disabled" at any time through May 20, 2004, the ALJ held that Plaintiff's statements regarding his symptoms and impairments were not generally credible.  (T 23)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## C.   Discussion

Plaintiff argues that the Commissioner erred by: (1) misinterpreting a medical opinion regarding Plaintiff's HIV symptoms; (2) failing to classify Plaintiff's vision problems as a severe impairment; (3) improperly discrediting Plaintiff's subjective testimony; (4) omitting Plaintiff's vision problems when assessing his residual functional capacity; and (5) concluding that Plaintiff did not meet Listing 14.08N.  (Dkt. 18).  Defendant maintains that the ALJ's decision is supported by substantial evidence, and that the ALJ evaluated Plaintiff's claims under proper legal standards. (Dkt. 14).  The undersigned will address the first and fifth of Plaintiff's issues together, as they both concern Plaintiff's symptoms due to HIV.

### 1.   Plaintiff's HIV Symptoms and Listing 14.08N

Plaintiff asserts that the ALJ misinterpreted the medical opinion of Advanced Registered Nurse Practitioner ("ARNP") Tara Hamilton.[4]  Plaintiff argues that ARNP Hamilton reported that Plaintiff met the requirements of 20 C.F.R., Part 404, Subpart P, Appendix 1, § 14.08N, as having repeated manifestations of HIV infections resulting in significant, documented symptoms such as

---

[4] Plaintiff suggests that the misunderstanding of ARNP Hamilton's opinion was caused by the fact that the seven-page report is split between two different exhibits in the administrative record. The first four pages of the report are located at T 507-510 and the last three pages are located at T 442-444.  However, Plaintiff does not argue that the division of the report, by itself, is grounds for remand or ask that the case be remanded for reordering and renumbering of the record.  It is clear from the ALJ's opinion that he read ARNP Hamilton's entire report, as the opinion reviews comments from both portions.  (T 21-22)

fatigue, fever, malaise, weight loss, pain, and night sweats.  (Dkt. 18 at 3).  Plaintiff maintains that

the ALJ did not consider this evidence when evaluating whether Plaintiff met a listed impairment.

(Dkt. 18 at 15).  Defendant asserts that the ALJ appropriately weighed ARNP Hamilton's opinion

and considered it with the evidence as a whole.

The ALJ outlined ARNP Hamilton's opinion as follows:

"Nurse Practitioner Hamilton stated that the claimant had no HIV related bacterial
infections, fungal infections, viral infections, malignant neoplasms, hematological
abnormalities, or chronic diarrhea.  However, she stated that the claimant had
difficulties in maintaining social functioning and difficulties in completing tasks in
a timely manner due to deficiencies in concentration, persistence, or pace.  She stated
that the claimant showed signs of cognitive slowing and memory impairment."

(T 21-22)  The ALJ did not discuss how much weight he gave to ARNP Hamilton's opinion.  In

holding that Plaintiff had not met a listing, the ALJ stated, "No treating or examining physician has

mentioned findings, either singularly or in combination, equivalent in severity to the criteria of any

listed impairment."  (T 22)

A medical opinion from a nurse practitioner is not an "acceptable medical source" under

statute, but it is an "other source" which may be considered by the ALJ.  20 C.F.R. § 404.1513.  The

opinion of an "other source" cannot establish the existence of an impairment.  Crawford v.

Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004).  In determining whether

a plaintiff's condition meets or equals a listed impairment, it is the plaintiff's burden to produce all

medical evidence and findings necessary to make this determination.  Bell v. Bowen, 796 F.2d 1350,

1353 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1525, 404.1526).  The ALJ properly considered

ARNP Hamilton's report as an "other source" of medical evidence.

Plaintiff next argues that the ALJ misinterpreted ARNP Hamilton's report.  On page six of

her report, ARNP Hamilton wrote "yes" next to each of two lines of text which read:

2.  Difficulties in maintaining social functioning; or

3.  Difficulties in completing tasks in a timely manner due to deficiencies in
    concentration, persistence, or pace.

(T 442)  Notably, ARNP Hamilton did not write "yes" next to the entry which read:

N.  Repeated (as defined in 14.00DS) manifestations of HIV infection (including
    those listed in 14.08A-M, but without the requisite findings, e.g., carcinoma of
    the cervix not meeting the criteria in 14.068E, diarrhea not meeting the criteria
    in 14.08J, or other manifestations, e.g., oral hairy leukoplakia, myositis) resulting
    in significant, documented symptoms or signs (e.g. fatigue, fever, malaise,
    weight loss, pain, night sweats) and one of the following at the marked level (as
    defined in 14.00DS)

Id.[5]

        In addition, on the final page of her report ARNP Hamilton did not check the space provided

for the conclusion "Yes, meets or equals listing 14.08."  (T 444)  ARNP Hamilton wrote instead:

Q 48 yr. immune compromised Black male who shows signs of cognitive slowing
and impairment as well as memory impairment.  He demonstrates difficulties in
maintaining social functioning and has difficulty completing tasks in a timely manner
due to def. in concentration, persistence, and pace.

(T 444)  Considering the report as a whole, ARNP Hamilton indicated two areas in which Plaintiff

had difficulties maintaining social functioning and had deficiencies in concentration, persistence,

and pace.  (T 442, 444)  However, when given the opportunity to select other symptoms as an

option, ARNP Hamilton did not indicate that Plaintiff had significant documented symptoms such

as fatigue, fever, malaise, weight loss, pain, or night sweats, or that Plaintiff met or equaled Listing

14.08N.  Id.     The ALJ's assessment of ARNP Hamilton's report is consistent with the contents of

the report: ARNP Hamilton did not indicate in her report that Plaintiff had HIV-related illness or that

---

        [5] Although the sections numbered "2" and "3" are sub-categories under the section labeled
"N," they are arranged as though they are independent selections with identical indentation and
spacing as separate categories would be.

he met Listing 14.08N.  Moreover, had she done so, the ALJ is not bound to give her opinion great weight because she is not an "acceptable medical source" as discussed above.  Plaintiff has not shown error in the ALJ's finding that Plaintiff did not meet Listing 14.08N due to symptoms of HIV, nor has Plaintiff shown that the ALJ incorrectly interpreted ARNP Hamilton's opinion.  Substantial evidence supports the ALJ's decision that Plaintiff's condition did not meet or equal a listed impairment.

### 2. Plaintiff's Vision as a "Severe" Impairment

Plaintiff contends that the ALJ incorrectly assessed the severity of Plaintiff's vision impairment and its effect on his ability to work in determining Plaintiff's residual functional capacity ("RFC").  The ALJ found that Plaintiff was unable to perform tasks that required "acute vision."  (T 25)  Plaintiff states that the ALJ failed to take into account the blurry vision Plaintiff experiences when performing near-sighted work.

On October 16, 2001, Plaintiff was examined by ophthalmologist Donald Knapp, M.D. ("Dr. Knapp").[6]  (T 370)   Dr. Knapp indicated that Plaintiff's right eye was only slightly impaired by cataract which was likely not progressive.  Id.  At a follow-up examination on March 19, 2002, Dr. Knapp found that Plaintiff's vision could be improved with glasses and recommended treatment of Plaintiff's diabetes.  (T 369)  Plaintiff later received treatment from William Cobb, M.D. ("Dr. Cobb").  On March 5, 2003, Dr. Cobb prescribed Plaintiff glasses, recommended that Plaintiff get bifocals, and noted that no other treatment was necessary at that time.  (T 449)  On March 11, 2004,

---

[6] Plaintiff's vision was also evaluated by Herbert Gersh, M.D. ("Dr. Gersh") on August 28, 2000 in connection with Plaintiff's previous application for DIB and SSI.  (T 236-41)  Dr. Gersh measured Plaintiff's uncorrected visual acuity as 20/70 in each eye.  (T 240)

Dr. Cobb stated that Plaintiff's right eye appeared unchanged, but recommended cataract extraction for the right eye.  (T 552)

The ALJ questioned Plaintiff about his vision at the administrative hearing on August 21, 2003.  The ALJ asked, "Now with your glasses, do you have any problems seeing?" to which Plaintiff responded "No."  (T 602)  When the ALJ continued to question Plaintiff about his vision, Plaintiff stated that he could see well enough to read the newspaper, but that the newspaper was sometimes blurry.  (T 603)  Plaintiff indicated that he had recently been to an eye doctor and had obtained the bifocals which the doctor prescribed and has no problems seeing.  Id.

The Eleventh Circuit has held that "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).  In his decision, the ALJ reviewed Plaintiff's treatment by Drs. Knapp and Cobb.  (T 21, 23-24)  The ALJ found that Plaintiff was limited by his vision problems and could not perform tasks requiring "acute vision."  (T 25)  The ALJ defined "acute vision" as better than 20/70 in one eye and 20/50 in the other eye, terms which correspond to Dr. Knapp's measure of Plaintiff's corrected visual acuity.  (T 644, 369)

The ALJ cited the testimony of a vocational expert in determining that an individual with vision measured at 20/70 in one eye and 20/50 in the other eye could perform the tasks of wrapper and packager, ticket taker, bench assembler and final assembler.  (T 644-46)  The ALJ properly took this testimony into consideration.  A vocational expert's testimony constitutes substantial evidence when the ALJ poses a hypothetical question which comprises all of the claimant's impairments.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing McSwain v. Bowen, 814 F.2d 617, 619-

8

20 (11th Cir. 1987)).  The ALJ also determined that Plaintiff's testimony regarding his symptoms was not generally credible, as discussed below, and therefore relied on the objective medical evidence in evaluating the severity of Plaintiff's vision problems.  Substantial evidence from the medical record and the vocational expert's testimony supports the ALJ's conclusions regarding Plaintiff's vision impairment and the severity of its effect upon his ability to work.

### 3.  Plaintiff's Credibility

Plaintiff next claims that the ALJ failed to articulate a basis for rejecting Plaintiff's testimony of fatigue, blurry vision, or mental sequela such as concentration, understanding, and memory problems.  (Dkt. 11 at 9-10).  Defendant argues that Plaintiff's medical records reveal contradictory statements made by Plaintiff and provide the ALJ with sufficient reason to discredit Plaintiff's testimony.

It is incumbent on the ALJ to make credibility findings as to claimant's testimony.  See generally Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  The Eleventh Circuit has established a three-part standard to use when evaluating a claimant's subjective complaints of pain or other subjective symptoms.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition, or (3) that the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged.  Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).[7]

---

[7] This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." Elam v. R. R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

Although the ALJ did not expressly cite to the applicable standard, his findings and discussion indicate that the ALJ was aware of and applied the proper standard. See Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002). The ALJ analyzed whether the medical evidence supported the severity of Plaintiff's allegations and found no evidence of an impairment which would restrict Plaintiff's ability to stand, walk, and sit as Plaintiff claimed. (T 23-24) The ALJ therefore found Plaintiff's testimony generally not credible. (T 24)

Therefore, the only question remaining is whether the ALJ's assessment of Plaintiff's testimony regarding his symptoms and restrictions is based on substantial evidence.[8] The court concludes that it is. The ALJ cited several specific reasons for rejecting Plaintiff's testimony as to the effect of his impairments. The ALJ noted that Plaintiff's statements regarding his symptoms were inconsistent, vague, and not supported by the evidence. (T 23) The ALJ also considered the range of Plaintiff's daily activities, including "preparing meals, performing household chores, driving, shopping, and even occasionally fishing." (T 24) Plaintiff has not shown that the reasons cited by the ALJ are unsupported by the record, were misinterpreted, or were incorrect. Substantial evidence supports the ALJ's credibility determination. See generally Allen v.Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989).

**4. Plaintiff's Residual Functional Capacity**

Finally, Plaintiff argues that the ALJ's determination of Plaintiff's residual functional capacity ("RFC") does not take into account the full extent of Plaintiff's vision problems or

---

[8] Credibility determinations are the province of the Commissioner, so long as those determinations are supported by substantial evidence. See Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991) (citation omitted).

symptoms from HIV, nor does it reflect Plaintiff's mental impairments. (Dkt. 18 at 11-14). Plaintiff specifically urges that the vocational expert's testimony was based on a hypothetical which did not include Plaintiff's eye conditions of stromal tear, structural problems, and astigmatism. Plaintiff asserts that the ALJ's RFC assessment also omitted Plaintiff's impairment in concentration, persistence, or pace as described in ARNP Hamilton's report. Defendant contends that the ALJ properly relied on the medical evidence in establishing Plaintiff's RFC.

Residual functional capacity is a medical determination to be made by the ALJ. See generally 20 C.F.R. §§416.945, 416.946. Before determining Plaintiff's RFC, the ALJ discussed ARNP Hamilton's opinion that Plaintiff had deficiencies in concentration, persistence, and pace. (T 21) The ALJ executed his obligation to weigh this evidence with the other medical evidence in the record, but properly gave this evidence less weight as an opinion of a nurse practitioner. The ALJ gave significant weight to the opinion of James Mendelson, Ph.D. ("Dr. Mendelson") that Plaintiff is moderately limited in his ability to understand, remember, and carry out detailed instructions, but could understand, remember, and carry out routine, one and two step instructions. (T 25) The ALJ thus limited Plaintiff's RFC to routine, one to two step instructions. Id. Plaintiff has not shown error in the ALJ's consideration of Plaintiff's mental impairments in assigning Plaintiff's RFC.

Plaintiff suggests that the vocational expert may have testified differently if Plaintiff's RFC—and therefore the hypothetical presented to the vocational expert—included Plaintiff's limitations of blurry vision and problems with near acuity. The ALJ is required to include only the restrictions he recognizes in the hypothetical question to the VE. See Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994). The ALJ's decision that Plaintiff's RFC did not include the limitations of

11

blurry vision and near acuity problems is supported by Plaintiff's testimony that he had no problems seeing with his glasses. (T 602)  It is also supported by Drs. Knapp's treatment notes that with glasses Plaintiff has normal vision in his left eye and improved, although limited, vision in his right eye (T 369) and by Dr. Cobb's opinion that prescription glasses were the only treatment necessary (T 449).  These items constitute substantial evidence supporting the ALJ's decision that Plaintiff was not functionally impaired by blurry vision or near acuity problems; the ALJ's incorporation of Plaintiff's visual limitations into the hypothetical was proper.

**D.    Conclusion**

The ALJ's decision is supported by substantial evidence and the proper legal principles.  The decision of the Commissioner is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED** that:

(1)    the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, each party to bear its own costs and expenses; and

(2)    the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g).

**DONE AND ORDERED** in Tampa, Florida on this  16th  day of August, 2006.

ELIZABETH A JENKINS
United States Magistrate Judge

12